Rockingham
No. 96-258

## JOHN AND DIANNA PEABODY

v.

## TOWN OF WINDHAM

December 29, 1997

*Forman & Bernier, P.A.*, of Londonderry (*Gary H. Bernier* on the brief and orally), for the plaintiffs.

*Beaumont & Campbell, P.A.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the defendant.

BRODERICK, J. The plaintiffs, John and Dianna Peabody, appeal a ruling of the Superior Court (*Murphy*, J.) denying their request for attorney's fees despite a finding that the Town of Windham Zoning Board of Adjustment (board) acted in bad faith by imposing restrictions on the use of their property. The Town of Windham (town) cross-appeals, arguing that the Superior Court (*Goode*, J.) erred in vacating the board's decision. Because we reverse the trial court's order vacating the board's decision, the plaintiffs' appeal is moot.

In February 1993, the plaintiffs purchased property in Windham that the prior owner had used for many years to operate a well drilling business. The property was located in a rural district that allowed for rural, residential, and noncommercial uses. The well drilling business predated zoning restrictions prohibiting its existence, and therefore, it operated as a lawful, nonconforming use. *See*

*New London v. Leskiewicz,* 110 N.H. 462, 465, 272 A.2d 856, 859 (1970). The plaintiffs acquired the rights to the nonconforming use when they purchased the property. *See New London Land Use Assoc. v. New London Zoning Board,* 130 N.H. 510, 516, 543 A.2d 1385, 1388 (1988).

In April 1993, the plaintiffs began moving paving equipment onto their property. This activity came to the attention of the town's building inspector, who wrote to the plaintiffs on April 27, 1993, advising that "[t]he paving company is not an allowed use in the Rural District." He ordered the removal of all paving equipment and required that "the property be returned to those uses permitted by zoning ordinance or the non-conforming use of a company that drills wells." The plaintiffs appealed to the board, arguing that they used the paving equipment in their construction business and that the scope of the nonconforming use had not been expanded. After a hearing, the board ruled that the plaintiffs did have a right to operate a construction business under the nonconforming use, but not a paving business. It ordered that no paving equipment or vehicles with residual paving materials be parked or repaired on the property.

Following a lengthy rehearing, at which more than a dozen witnesses expressed concern about an increase in traffic, the smell of diesel fuel, groundwater contamination, and related issues, the board reaffirmed its earlier ruling that the plaintiffs' construction business fell within the parameters of the nonconforming use. The board, however, imposed three conditions: (1) no paving materials or vehicles with residual paving materials were to be parked or repaired on the site; (2) equipment on site was limited to ten pieces; and (3) none of the plaintiffs' vehicles larger than cars or pickup trucks could use the access road to the property.

The plaintiffs appealed to the superior court. *See* RSA 677:4 (Supp. 1996). After an evidentiary hearing and a review of the certified record of the board, the trial court ruled that the board's decision was "unlawful and/or unreasonable" on its face, and that the conditions imposed by the board were unreasonable and beyond its authority. The trial court reasoned that the plaintiffs' appeal to the board merely sought a reversal of the building inspector's decision. Therefore, it was improper for the board to consider evidence "on disparate topics such as the environment, crime, and traffic safety — none of which has any relevance to a determination of whether the [plaintiffs] are entitled to a permitted nonconforming use." In vacating the board's decision, the trial court concluded that

the board acted in bad faith. The plaintiffs' subsequent request for attorney's fees was denied. This appeal and cross-appeal followed.

■ In reviewing the trial court's order, we "uphold the decision of the superior court unless [it] is not supported by the evidence or is legally erroneous." *Conforti v. City of Manchester*, 141 N.H. 78, 80, 677 A.2d 147, 149 (1996) (quotation omitted). For its part, the trial court, in reviewing the decision of a zoning board of adjustment, is limited to "a determination of whether, on the balance of the probabilities, the decision was unlawful or unreasonable." RSA 677:6 (1996); *see Peter Christian's v. Town of Hanover*, 132 N.H. 677, 683, 569 A.2d 758, 763 (1990). Findings of a zoning board of adjustment, upon all questions of fact properly before it, are deemed *prima facie* lawful and reasonable. RSA 677:6; *Biggs v. Town of Sandwich*, 124 N.H. 421, 426, 470 A.2d 928, 931 (1984). The issues before us are whether the trial court erred in ruling that the board, in deciding an administrative appeal involving the scope of a nonconforming use, had no right to impose conditions on its continued enjoyment, and that the conditions were unreasonable and unlawful.

■ The board has broad authority on subjects within its jurisdiction. *See Vlahos Realty Co. v. Little Boar's Head Dist.*, 101 N.H. 460, 463, 146 A.2d 257, 260 (1958). It has the power to "reverse or affirm, wholly or in part, or . . . modify the order, requirement, decision, or determination appealed from and . . . make such order or decision as ought to be made and, to that end, shall have all the powers of the administrative official from whom the appeal is taken." RSA 674:33, II (1996). This authority exists not only for administrative appeals, but for the grant of variances as well. RSA 674:33, I-II (1996).

■ The right to grant variances subject to conditions is well recognized, *see, e.g., Healey v. Town of New Durham*, 140 N.H. 232, 237, 665 A.2d 360, 366 (1995), and a similar right attaches to appeals from decisions by administrative officers involving nonconforming uses, provided the conditions are reasonable and lawful. *See* RSA 674:33, I-II; *Vlahos Realty Co.*, 101 N.H. at 463, 146 A.2d at 260. A change or expansion of a nonconforming use "may be more detrimental to zoning than a variance." *New London*, 110 N.H. at 465, 272 A.2d at 859. Accordingly, a zoning board, considering an administrative appeal, may impose reasonable conditions to prevent improper expansions of nonconforming uses. *See* RSA 674:33, I-II.

██ Although both the New Hampshire Constitution and State statute protect the existing use of land or structures from becoming unlawful by later zoning enactment, N.H. CONST. pt. I, arts. 2, 12; RSA 674:19 (1996), property owners' rights to use their property are not unlimited. *Town of Hampton v. Brust*, 122 N.H. 463, 468, 446 A.2d 458, 460 (1982). A controlling policy of zoning law is to carefully limit the extension and enlargement of nonconforming uses. *Arsenault v. Keene*, 104 N.H. 356, 359, 187 A.2d 60, 62 (1962); *cf. Keene v. Blood*, 101 N.H. 466, 469, 146 A.2d 262, 264 (1958) (provisions permitting change in nonconforming uses are strictly construed). In this area, the ultimate purpose of zoning regulations is to reduce nonconforming uses to conformity as quickly as possible. *Conforti*, 141 N.H. at 81, 677 A.2d at 150.

██ Accordingly, the party asserting that a proposed use is not new or impermissible bears the burden of proof. *New London*, 110 N.H. at 467, 272 A.2d at 860. Whether the challenged use, in this case the use of paving equipment and vehicles, is a substantial change in the nature or purpose of the nonconforming use turns on the facts and circumstances of the particular case. *See Conforti*, 141 N.H. at 82, 677 A.2d at 150. To make this determination, the following factors are considered:

> (1) to what extent does the use in question reflect the nature and purpose of the prevailing nonconforming use; (2) is it merely a different manner of utilizing the same use or does it constitute a use different in character, nature and kind; (3) does this use have a substantially different effect on the neighborhood.

*New London*, 110 N.H. at 467-68, 272 A.2d at 860. In sum, "[t]he degree to which the original nature and purpose of the undertaking remains unchanged largely determines whether there has been a change in the preexisting use." *Id.* at 468, 272 A.2d at 860.

██ The board was free to hear testimony related to these factors and, as authorized by statute, to impose conditions on the plaintiffs' continued enjoyment of their nonconforming use. *See* RSA 674:33, I(a), II. Unless the conditions were unreasonable, arbitrary, unduly burdensome, or undercut or unlawfully restricted the scope of the plaintiffs' vested nonconforming use, they should be affirmed. *See Vlahos Realty Co.*, 101 N.H. at 463, 146 A.2d at 260. We address each condition in turn.

██ The trial court concluded that the board's prohibition of paving materials, equipment, and vehicles was excessive and unlaw-

ful, construing it as preventing the plaintiffs from having an asphalt driveway or using conventional "driveway patch" to repair it. The record reveals that the parties construed the condition as applying to materials, equipment, and vehicles used in a paving business, not in maintaining a driveway. Furthermore, the record from the earlier rehearing reveals that the "paving" condition was imposed, in part, to address environmental concerns associated with residual paving materials and groundwater. The plaintiffs, in fact, procured an engineer specifically to address this topic, and numerous abutters raised related environmental issues in the hearing process. The condition was also intended to address health and welfare concerns and neighborhood impact generally. *Cf. Conforti*, 141 N.H. at 81-82, 677 A.2d at 150 (reasoning that increased noise from theater affected neighborhood). The board obviously concluded that this condition was consistent with the lawful scope and nature of the nonconforming use, and that without it, the use of the property would have violated the town's zoning ordinances. *Cf. Vlahos Realty Co.*, 101 N.H. at 464, 146 A.2d at 261 (upholding condition restricting sales to types of items sold previously under preexisting use). Based on the record before it, the trial court erred as a matter of law in rejecting this condition as either unreasonable or unlawful.

■ The trial court also misinterpreted the condition limiting construction equipment to ten pieces. The court suggested this restriction would include "shovels, crow bars, and wheelbarrows," and hence, it found the restriction unreasonable. In the abstract, that interpretation might be possible, but the record belies that result. Every reference to equipment made by counsel and the board plainly suggested that "equipment" was synonymous with vehicles. Hand tools were not affected by the condition. Moreover, the condition was reasonable given the rural, residential, and noncommercial uses of abutting and adjacent properties. *Cf. Healey*, 140 N.H. at 237, 665 A.2d at 366 (recognizing that variances may be granted to preserve "spirit of the ordinance"); *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 245, 614 A.2d 1048, 1051 (1992) (holding that permitting construction of new building would be contrary to zoning intended to protect "scenic, recreational and environmental values"). The board obviously intended to keep the use of the plaintiffs' property consistent with its nonconforming use while controlling neighborhood traffic and disruption. *See Conforti*, 141 N.H. at 82, 677 A.2d at 150.

■ Finally, the trial court rejected the board's restriction limiting the size of plaintiffs' vehicles authorized to use the access

road to the property on the basis that the board had no jurisdiction to impose it. While the board's jurisdiction is limited to regulating the use of land, *see* RSA 674:16, I, :33 (1996), the board is permitted to consider the expected impact on traffic when making its decisions. *See New London*, 110 N.H. at 467-68, 272 A.2d at 860; *cf., e.g., Buskey v. Town of Hanover*, 133 N.H. 318, 325, 577 A.2d 406, 411 (1990) (reasoning that evidence regarding impact on local traffic was properly considered in determining permitted use of property). It may not, however, restrict use of a public road in a manner unrelated to its authority to lawfully regulate the use of a property. *See Vlahos Realty Co.*, 101 N.H. at 463, 146 A.2d at 260 ("zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises"). Apparently, the trial court believed the board had done so in this case.

When the vehicle restriction is read in concert with the other conditions imposed by the board, however, it is clear that the board intended to maintain the scope of the nonconforming use by limiting the size of vehicles allowed to enter and leave the plaintiffs' property. In fact, the plaintiffs offered, during the rehearing, to limit their use of the access road to the specific vehicles ordered by the board. The board did not exceed its jurisdiction in this instance.

Accordingly, we reverse the trial court's ruling on all conditions, and thus, the plaintiffs' appeal of the trial court's denial of attorney's fees is moot. We remand for a determination as to whether the condition limiting the size of vehicles allowed on the property is reasonably related to preserving the nonconforming use or unduly restricts the vested use of the plaintiffs' property. *See id.* at 464, 146 A.2d at 261.

*Affirmed in part; reversed in part; remanded.*

All concurred.