**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5242-18T2

HARRISON EVG PROPERTIES,
LLC, and MICHAEL TRENCHER,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY, acting
by and through its DIVISION OF
PROPERTY MANAGEMENT &
CONSTRUCTION,

     Defendant-Respondent.

_____

Argued November 10, 2020 – Decided December 16, 2020

Before Judges Fisher, Gilson, and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0024-15.

Douglas S. Brierley argued the cause for appellant (Brierley & Humick, LLP, attorneys; Bruce H. Bergen, on the briefs).

Sudha V. Raja, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney

General, of counsel; Sudha V. Raja and Vivek N. Mehta, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Harrison EVG Properties, Inc. appeals from the motion judge's grant of summary judgment in favor of defendant State of New Jersey, acting by and through the Division of Property Management (the Division), dismissing Harrison's complaint with prejudice.

We review the motion judge's ruling de novo, and apply the same standard as did the judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). Viewing the competent evidence in the light most favorable to Harrison, Brill v. Guardian Life Ins. Co.

of Am., 142 N.J. 520, 540 (1995), we agree with the motion judge that Harrison failed in that regard and affirm.

In December 2009, Harrison and the Division entered a written lease agreement for several floors of commercial office space. The lease terms required Harrison to complete fit-out construction work and provide a temporary certificate of occupancy (TCO) or a final certificate of occupancy (CO) to the Division by February 12, 2010. When Harrison did not complete the work or obtain a TCO or CO, the parties entered into an initial lease amendment and extended the completion date to September 27, 2010. Harrison did not complete construction by that date for various reasons, including internal organizational and financial issues.

In May 2012, Harrison refinanced the property with Paradigm Evergreen LLC (Paradigm), and Harrison agreed to: (1) "use reasonable efforts to complete" designated construction work by June 30, 2012; (2) deposit funds in escrow to ensure there were sufficient available funds to complete construction; and (3) grant Paradigm the option to intervene and complete construction in the event Harrison breached. Paradigm exercised the option to undertake construction when Harrison failed to meet the June 30, 2012 deadline.

Harrison failed to make the required mortgage payments, and Paradigm declared a default and accelerated the loan in March 2013. Harrison and Paradigm entered into a Settlement and Forbearance Agreement, which allowed Paradigm to foreclose if Harrison failed to pay amounts due by August 22, 2013. When Harrison failed to meet that payment requirement, it and Paradigm entered into three "Discounted Payoff Agreements," dated March 24, 2014, May 14, 2014 and May 21, 2014. Paradigm secured the right to record a deed in lieu of foreclosure if Harrison failed to make full payment to Paradigm.

The Division, which was not a party to the agreements between Paradigm and Harrison, entered into a second lease amendment with Harrison on September 20, 2013, after construction had still not been completed. That amendment granted Harrison a ninety-day extension to complete construction. Harrison failed to meet that December deadline. The Division, as it had done after every previous missed deadline, did not exercise its right to terminate the lease.

Harrison failed to make payments to Paradigm as per the Discounted Payoff Agreements, and Paradigm exercised its right to record a deed in lieu of foreclosure in July 2014. Harrison never completed the construction work or

obtained a TCO or CO. Paradigm completed the work and delivered occupancy to the Division in May 2016.

Prior to the recording of the deed in lieu of foreclosure, Harrison sought to refinance the property with Revere Capital LLC (Revere). In its complaint, Harrison alleges on May 9, 2014, it, through counsel, "requested that [the Division] execute an Estoppel and Subordination, Non-Disturbance and Attornment Agreement (SNDA) and provide a final punch list, all of which were required by Revere to close the loan." It also alleges

> [o]n June 3, 2014, [the Division] provided a proposed Estoppel, SNDA, and a third amendment to the Lease, which again imposed conditions that exceeded the scope of the [original l]ease, as amended. After attempting to negotiate the terms of these three documents over the next two days, [the Division], without reason, withdrew the proposed documents on June 5, 2014.

In its three-count complaint, Harrison alleges breach of agreement; breach of implied covenant of good faith and fair dealing; and tortious interference with prospective economic advantage[1] due to the Division's refusal to provide the documents needed for Harrison to close on the refinance with Revere, pay Paradigm and prevent the foreclosure resulting in Harrison's loss of the property.

---

[1] In the third count, Harrison also includes language alleging tortious interference with contractual relationships.

Plaintiff argues the motion judge erred because there are "material issues of fact [in dispute] that must be determined by the trier of fact," "more fully set[ting] forth" those arguments in Points II and III of his merits brief:  1) The trier of fact should determine if defendant's refusal to cooperate with defendant in their attempt to refinance the property violated the implied covenant of good faith and fair dealing, and 2) the motion judge erred in determining defendant was immune under the New Jersey Contractual Liability Act (the Act), N.J.S.A. 59:13-1 to 13-10, because plaintiff sought compensatory, not consequential damages as found by the motion judge, an issue that should have been left to the trier of fact.

There is no dispute the original lease and the first and second amendments thereto were contracts between the parties.  But to establish a breach of contract claim, a plaintiff is also required to prove it "did what the contract required [the plaintiff] to do; . . . [the] defendant did not do what the contract required [the defendant] to do, . . . ; and . . . [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff."  Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (first, third, fourth and seventh alterations in original) (quoting Globe Motor Co. v. Idgalev, 225 N.J. 469, 482 (2016)).

Tellingly, Harrison's merits brief does not identify any provision in the lease or amendments that the Division breached. And, as the motion judge noted, Harrison was "[t]he only party that breached its contractual duties" by failing "to complete the required construction work within the time agreed by the parties through the original [l]ease and the two [a]mendments, and which never produced a TCO or CO for the [p]remises[.]" Without a TCO or CO, the Division could not occupy the premises.

Instead, Harrison's complaint alleges the Division acted to thwart its refinance with Revere. Even if true, those actions did not breach any provision of the original or modified lease terms. No provision in the agreements contemplated the Division's cooperation in Harrison's refinance of the property. Indeed, Harrison's complaint states the Division "provided a proposed [e]stoppel, SNDA, and a third amendment to the [l]ease, which again imposed conditions that exceeded the scope of the [l]ease, as amended," and that negotiations regarding the terms of those documents "over the next two days" failed, leading the Division to withdraw those documents. The complaint confirms that the Division was under no obligation under the lease or amendments to provide the documents. Any new agreement to do so was never reached. Harrison admits in its complaint it "continued efforts to negotiate with

[the Division] and [was] willing to accept more and more unreasonable demands and conditions imposed by [the Division] in an attempt to mitigate [its] damages, but all to no avail." Thus, the Division was not in breach of any contract it entered with Harrison.

In the absence of a breach of any express contract term, Harrison contends the Division "violate[d] the implied covenant of good faith and fair dealing" and did not "turn square corners" in its dealings. All "contract[s] contain[] an implied covenant of good faith and fair dealing." Wade v. Kessler Inst., 172 N.J. 327, 340 (2002). But the covenant means that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" Bak-A-Lum Corp. v. Alcoa Bldg. Prods., 69 N.J. 123, 129 (quoting Ass'n Group Life, Inc. v. Catholic War Vets. of U.S., 61 N.J. 150, 153 (1972)). "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22 (Lord ed. 2002)).

The Division's alleged actions did not deprive Harrison of the "fruits" of the contracts. Again, nothing in the lease or amendments contemplated or required the Division to cooperate in a refinance. Even if, as Harrison contends in its merits brief, the Division imposed demands in its negotiation of a third lease amendment, including: "detailed and comprehensive financial analysis of Harrison and the subject lease by a [certified public accountant]; . . . [the hiring of] an outside property manager for a period of [ten] years; . . . an unreasonable amount of time to complete its investigation; and . . . numerous amendments to the lease[,]" those actions did not impact the lease agreements, depriving Harrison of any benefit thereunder. Harrison deprived itself of those "fruits" by failing to complete construction and deliver the premises, and by failing to fulfill its obligations to Paradigm. As the motion judge observed, "it took the intervening action of an unrelated third-party—the lender, exercising separate contractual rights given to it by Harrison—to bring about the loss." There was, therefore, no support for Harrison's implied-covenant claim.

In light of our determination that the Division's actions did not deprive Harrison of any benefit under the lease and amendments, we need not extend our analysis of that issue. For completeness, however, we agree with the motion judge's reasoning, set forth in his written opinion, that Harrison failed to support

9

its implied-covenant cause of action by proffering evidence of the Division's bad faith or ill motive, a required element of that claim. Seidenberg v. Summit Bank, 348 N.J. Super. 243, 261 (App. Div. 2002). As the judge explained, in view of Harrison's continued failure to complete construction and deliver the premises, "[t]he State was not required 'to overlook its own rights under the agreement to protect its property interests because such action is detrimental to the other party's interests.'"[2]

We also agree with the motion judge that the New Jersey Contractual Liability Act, to which the lease was expressly subject, barred Harrison's claim. Under the Act, the State "waives its sovereign immunity from liability arising out of an express contract or a contract implied in fact," but "recovery against the State for punitive or consequential damages arising out of contract" and for "any recovery against the State for claims based upon implied warranties or upon contracts implied in law" is prohibited. N.J.S.A. 59:13-3. The Act thus bars Harrison's claim based on the implied covenant of good faith and fair dealing, and all claims because the damages it seeks are consequential.

---

[2] In his written opinion, the judge quoted Liqui-Box Corp. v. Est. of Elkman, 238 N.J. Super. 588, 599-600 (App. Div. 1990) in support of his reasoning.

A-5242-18T2

As said, Harrison failed to identify any lease term the Division breached. But assuming there was a breach—which we neither determine nor imply—Harrison's damages resulted from the loss of the property when the deed in lieu of foreclosure was filed. Both Harrison's complaint and statement of damages aver all its damages flow from that loss of ownership. As such, they were not direct compensatory damages. That is they did not "aris[e] naturally, i.e., according to the usual course of things, from such breach of contract itself"; nor were they "reasonably . . . supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Rep. 145 (1854); see also Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 13 (2007).

If Harrison's damages did not arise "according to the usual course of things," it follows that they were consequential damages. See Restatement (Second) of Contracts § 351cmt. b (Am. Law Inst. 1981) (defining consequential damages as "[t]he damages recoverable for loss that results other than in the ordinary course of events"). Harrison's financing, breach of financing agreements, and refinancing were not contemplated in the lease or amendments. The damages did not arise in any course of events related to the lease or

11

amendments. They were, at best, consequential; Harrison is therefore barred from any recovery under the Act.

We thus conclude the motion judge did not err in granting the Division's motion for summary judgment.

Harrison's merits brief contained no argument with regard to its claims for tortious interference with prospective economic advantage and tortious interference with contractual relationships. As such, Harrison waived any argument that the motion judge erred in dismissing those claims. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5242-18T2